IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | | |
|---|---|---|
| DONALD ROGER GRIFFIN II, | ) | Cause No. CV 05-49-GF-CSO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| LAUREL ANDRECHAK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

On May 11, 2005, Plaintiff Donald Griffin applied to proceed in forma pauperis with this action under 42 U.S.C. § 1983. The application was granted in a separate Order. Griffin is a state prisoner proceeding pro se.

On March 20, 2006, Defendant Andrechak filed a motion for summary judgment and brief in support, along with a Statement of Uncontroverted Facts. She also gave Griffin the notice required by D. Mont. L.R. 56.2 and Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998) (en banc).

On March 29, 2006, Plaintiff Griffin responded by moving to deny the motion for summary judgment, submitting an affidavit and exhibits. On April 7, 2006, Andrechak filed a Reply.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

**I. Summary Judgment Standards**

A party is entitled to summary judgment if that party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. Id. Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of

summary judgment.  Anderson, 477 U.S. at 248.

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial.  However, if the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  Id. at 249-50.

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

Id. at 252.

In civil rights cases and in the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe the pleadings liberally and to afford the pro se litigant the benefit of any doubt.  Baker v. McNeil Island Corrections Ctr., 859 F.2d 124, 127 (9th Cir. 1988).

**II. Griffin's Allegations**

Griffin brings his case under the Eighth Amendment and 42 U.S.C. § 1983.  He avers that he was treated at Montana State Prison and at Crossroads Correctional Center in Shelby for a degenerative spinal disc disease and cervical, lumbar, and sacral subluxation.  He was prescribed 75 mg Elavil at night and 50 mg Indocin as needed for headaches.  He was also prescribed 250 mg tetracycline for adult acne.  When he arrived at Great Falls

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

Regional Prison, his Elavil was stopped for two days, then resumed at a reduced dosage of 25 mg.  One month later, both the Indocin and the tetracycline were stopped.  He contends that "the medical staff at Great Falls Regional" have never given him a physical or had him see a doctor.  Griffin states that he has constant back pain and very bad headaches.  See Compl. (doc. 8) at 3-4, ¶¶ IV-V.

Griffin contends that Laurel Andrechak, a nurse practitioner at CCDC, "has not performed properly her duties to treat and diagnos[e] Mr. Griffin[']s medical conditions and repeatedly denied Mr. Griffin[']s requests to see a doctor."  Supp. to Compl. (doc. 14) at 1 (referring to Exhibits 1-10 (doc. 6)).

For his relief, Griffin asks to have x-rays taken of his spine and to have them sent to his own physician in Butte, Dr. Jim Hash.  He asks that the prison be ordered to follow his doctor's recommendations and to pay his costs in this action as well as his medical costs and cost of health aids.

## III. Analysis

Griffin states that the change in his diet has cleared up 95% of his acne problem and that he will not further address that issue.  Accordingly, the Court considers the tetracycline claim withdrawn.

### A. Eighth Amendment Law

The Eighth Amendment requires that prisoners receive adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  See

also McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing Estelle), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). Prisoners must also be protected from serious risks to their health. See, e.g., Farmer v. Brennan, 511 U.S. 825, 837 (1994); Helling v. McKinney, 509 U.S. 25, 33-34 (1993); Wallis v. Baldwin, 70 F.3d 1074, 1076-77 (9th Cir. 1995).

However, mere disagreement between a prisoner-patient and prison medical personnel over the need for or course of medical treatment is not a sufficient basis for an Eighth Amendment violation. Franklin v. State of Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981); see also Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (difference of medical opinions). The plaintiff must show that each defendant acted with "deliberate indifference" to his serious medical needs.

To show a violation of the Eighth Amendment, a prisoner must show both (1) that he was confined under conditions posing a risk of objectively sufficiently serious harm and (2) that the officials had a sufficiently culpable state of mind in denying the proper medical care. Lolli v. County of Orange, 351 F.3d 410, 419 (9th Cir. 2003) (quoting Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002)) (internal quotation marks omitted). "A defendant is liable for denying needed medical care only if he knows of and disregards an excessive risk to inmate health and safety." Id. (quoting Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002))

(internal quotation marks omitted).

> In order to know of the risk, it is not enough that the person merely be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists ... he must also draw that inference.... [I]f a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a prisoner's serious medical needs on the basis of either his action or his inaction.

Id. (quoting Gibson, 290 F.3d at 1188).

Where the question is one of differing treatments requested by a prisoner and provided by a prison official, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

### B. Defendant's Motion

In support of her motion, Andrechak filed her own affidavit and a "Chronology of Care" based on Griffin's medical records. She avers that, when he was placed at the Cascade County Regional Detention Center, she reviewed his medical records and found that he had been prescribed varying dosages and types of medications. Andrechak Aff. (Court's doc. 26) at 3, ¶ 9. The medical records Griffin submitted with his affidavit support this statement. See, e.g., Pl.'s Ex. 3 (Court's doc. 29-1 at 13).

The affidavit and Chronology show that Andrechak responded to

every kite Griffin submitted. While Andrechak undoubtedly decreased Griffin's dosage of Elavil and then discontinued all three medications, she avers that she did so in accordance with Department of Corrections policy, which is designed "to safely administer and regulate prescription medications." Andrechak Aff. at 2, ¶ 6. Andrechak states that the DOC policy allowed her to give Griffin Elavil as a pain reliever in dosages of 10-25 mg, id. 3, ¶ 10, and that she changed the prescription to ibuprofen and naproxen when Griffin told her that he was experiencing pain, id. ¶ 12. She also states that DOC policy placed a 14-day limit on Indocin because it can adversely affect the stomach, so she permitted Griffin to use Indocin for a period of time but then discontinued the medication. Id. at 4, ¶¶ 15-16. In each case, when Andrechak decreased dosage and discontinued a prescription, she attempted to deal with Griffin's medical issues by other medications.

In response, Griffin submitted his own affidavit and medical records from Montana State Prison and the Missoula County Detention Center. Those records show that he was given 75-mg doses of Elavil and given Indocin at other facilities. However, he does not refute Andrechak's contention that DOC policy required Andrechak to act as she did. In fact, one of his own exhibits refers to the DOC's drug formulary. See Pl.'s Ex. 6 (Court's doc. 29-2 at 12).

While it is true that there are discrepancies between the

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

medications and dosages that Griffin received at other facilities and those he received from Andrechak, it appears that Andrechak acted in accordance with policy. Moreover, she stated medical reasons for the policy's limitations on both Elavil and Indocin, and she attempted to deal with Griffin's medical issues as best she could. Griffin does not contest those facts. Consequently, the Court can only conclude that she was not deliberately indifferent to his serious medical needs.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

Andrechak's motion for summary judgment (Court's doc. 23) should be GRANTED and Griffin's motion to deny summary judgment (Court's doc. 28) should be DENIED. Judgment should be entered by separate document in favor of Defendant Andrechak and against Plaintiff Griffin.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the Plaintiff. Plaintiff is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days after the date on the certificate of mailing below, or objection is waived.

<u>Griffin must immediately inform the Court of any change in his</u>

<u>address.</u>

DATED this 13th day of September, 2006.

<u>/s/ Carolyn S. Ostby</u>
Carolyn S. Ostby
United States Magistrate Judge

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9